AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>ALL MONIES AND OTHER THINGS OF VALUE IN<br>BANK OF AMERICA ACCOUNT # 446043617409,<br>IN THE NAME OF "TERRON DEMISE BARNES" | )<br>)<br>)<br>)<br>)    Case No. 20-SZ-70 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____Columbia_____ is subject to forfeiture to the United States of America under ___21___ U.S.C. § __881(a)(6)__ *(describe the property)*:

All monies and other things of value in Bank of Account # 446043617409.

The application is based on these facts:

See Attached Affidavit.

❏ Continued on the attached sheet.

_____
*Applicant's signature*

Joshua B. Rothman, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___07/17/2020___

_____
*Judge's signature*

City and state:  Washington, D.C.

Deborah A. Robinson, U.S. Magistrate Judge
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>ALL MONIES AND OTHER THINGS OF VALUE IN<br>BANK OF AMERICA ACCOUNT # 446043617409,<br>IN THE NAME OF "TERRON DEMISE BARNES" | )<br>)<br>)   Case No.   20-SZ-70<br>)<br>) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ District of _____ Columbia _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

All monies and other things of value in Bank of America Account # 446053617409.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 07/30/2020 _____
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to
_____ Deborah A. Robinson, U.S. Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days (not to exceed 30)     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ 07/17/2020 _____     _____
*Judge's signature*

City and state:   Washington, D.C. _____     Deborah A. Robinson, U.S. Magistrate Judge
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>20-SZ-70 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: SEIZURE OF ALL MONIES AND OTHER THINGS OF VALUE IN BANK OF AMERICA ACCOUNT # 446043617409,  IN THE NAME OF "TERRON DEMISE BARNES" | **No. 20-SZ-70**<br><br>**<u>UNDER SEAL</u>** |

## <u>AFFIDAVIT IN SUPPORT OF A SEIZURE WARRANT</u>

I, Joshua Rothman, a Special Agent with the Federal Bureau of Investigation (hereinafter, "your affiant" or "I"), I hereby state the following in support of this Application for Seizure Warrant (hereinafter, "your affiant" or "I"), being duly sworn, depose, and state as follows:

### INTRODUCTION

1.      I am "an investigative or law enforcement officer" of Federal Bureau of Investigation. Your Affiant hereby state the following in support of this Application for Seizure Warrant:

2.      This affidavit is submitted in support of an application for a seizure warrant for all monies and other things of value contained in <u>BANK OF AMERICA BANK ACCOUNT # 446043617409</u> (hereinafter "the **TARGET ACCOUNT**") held in the name of "Terron Demise Barnes" ("Barnes") located at 3821 Minnesota Avenue NE, Washington, D.C., for which probable cause exists that such moneys are subject to seizure and forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), on the grounds that they are proceeds derived from the sale and distribution of illegal narcotics.

2.      Your Affiant, Special Agent Joshua Rothman, is a sworn member of the Federal Bureau of Investigation and has been so since February 2008. I have been a Special Agent with the FBI, in Washington, D.C., for the past eleven years and I am currently assigned to an FBI Safe Streets Tasks Force. I am principally involved in narcotics and narcotics-related investigations, including narcotics

1

investigations related to violent offenses. Since 2008, I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics, white-collar crimes, search warrant applications, and various other crimes. Since January of 2015, I have been assigned to work on federal narcotics investigations on the FBI Washington, D.C. Safe Streets Task Force, a violent crime and gang task force. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term narcotics and homicide investigations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; conducting court-authorized Title III wiretap investigations; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

3.      Since this affidavit is being submitted for the purpose of obtaining a seizure warrant for the **TARGET ACCOUNT**, I have not set forth every fact learned during the course of this investigation. The information contained herein is based on personal knowledge, information provided to your Affiant by sworn officers, and information obtained from public records, cooperative witnesses, and others sources as indicated herein.

4.      Based upon your Affiant's training and experience, your Affiant knows:

a.      That narcotic traffickers often purchase and/or title their assets in the names of relatives, associates, aliases, or in the names of other individuals known as nominees to avoid detection of these assets by government agencies.

b.      That narcotic traffickers will pay individuals or associates to act as nominees to obtain property to assist them in hiding their assets from government agencies.

c.      That although those assets are in others' name, that narcotic traffickers do actually own and utilize their assets, and exercise dominion and control over them.

d.      It is common for narcotics trafficker to conceal narcotics, other contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities.

e.      In order to accomplish this concealment, narcotic traffickers frequently build "stash" places in which the traffickers maintain evidence pertaining to their narcotic business as well as records which reflect the manner in which they conceal narcotic proceeds, such as:

1.      Currency

2.      Financial Instruments

3.      Precious metals and Gemstones

4.      Jewelry

5.      Books

6.      Records

7.      Invoices receipts

8.      Bank records

3

9.      Photos

10.     Safe deposit box keys.

Narcotic traffickers within their residences, businesses, or other locations over which they have access to and maintain dominion and control maintain these items.

f.      Narcotic traffickers must maintain, on hand, large amounts of currency in order to maintain and finance their ongoing narcotic business.

g.      That narcotics traffickers often utilize electronic equipment such as computers, cell phones, facsimile machines, and currency counting machines to generate, transfer, count, record and/or store the information described above.

h.      That when narcotic traffickers amass large proceeds from the sale of drugs they attempt to legitimize these profits through money laundering activities. To accomplish their goals, narcotic traffickers utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency.

i.      The sale of marijuana, and other controlled substances generates large quantities of United States Currency in small denominations (commonly referred to as "street money").

j.      That it is common for drug dealers to physically handle and count the "street money" after receiving it in exchange for the controlled dangerous substance, thereby leaving residue traces of controlled substance on the "street money." That law enforcement agencies own dogs which are trained to react to the scent of controlled dangerous substances and their residue

4

traces; and that those trained dogs have reacted to narcotic tainted currency negotiated at banks and concealed in the residences of narcotics traffickers.

      k.    That it is common for drug dealers to separate their "street money" by denominations and put this currency in rubber banded stacks in varying thousand dollar increments to facilitate quick counting.

      l.    That the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause to conclude that there is a substantial connection between the questionable currency and narcotics transactions.

      m.    That the Currency Transaction Report ("CTR") Internal Revenue Service ("IRS") Form 4789, which is required to be completed and filed with the IRS by all financial institutions on every currency transaction. Traffickers attempt to negotiate their illegal profits at financial institutions on every currency transaction that exceeds $10,000.00. This causes tremendous problems for narcotics traffickers when they attempt to negotiate their illegal profits at a financial institution.

      n.    That, in order to evade the filing of a CTR, narcotic traffickers often "structure" their currency transactions so that no one transaction exceeds $10,000.00 or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency.

      o.    That in order to evade handling physical currency and detection by law enforcement, narcotic traffickers often utilize mobile payment services; such as, Venmo, PayPal, Cash App and others online money transfer services to conduct and transfer drug payments.

p.      That narcotic traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the IRS or other federal, state or local agencies. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel, can be traced and documented by the government. The "source" of their income reported on theses returns is usually falsely stated, misleading or generic in terms.

q.      That narcotic traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization.

r.      That narcotic traffickers take, or cause to be taken photographs of themselves, their associates, their property and their product. That these traffickers usually maintain these photographs in their possession.

s.      That the courts have recognized that unexplained wealth is probative evidence and crimes motivated by greed, in particular trafficking in controlled substances.

t.      That narcotics traffickers commonly have in their possession, on their persons, at their residences and/or their businesses, firearms including, but not limited to, handguns, pistol, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a narcotic trafficker's property which may include, but is not limited to narcotics, jewelry, narcotic paraphernalia, books, records and U.S Currency.

5.      The facts and information contained in this affidavit are based on your affiant's personal knowledge, and information obtained from federal and/or state law enforcement officers. All observations referenced in this affidavit that were not personally made by me were related to me by the persons who

6

made such observations through reports or conversations. This affidavit only contains such information as is necessary to show probable cause for the search and seizure of the TARGET ACCOUNT, which may constitute evidence, fruits, and instrumentalities of, *inter alia*, violations of the laws of the District of Columbia and the United States, to include narcotics-based offenses, 21 U.S.C. § 841(a)(1), firearms-based offenses, 18 U.S.C. §§ 922(g)(1) & 924(c)(1); and money-laundering offenses, 18 U.S.C. § 1956.

## **PROBABLE CAUSE**

### Background of the Investigation

6.      On February 7, 2020, at approximately 1:05 a.m., MPD officers executed an emergency search warrant, numbered 2020CSW783, and recovered a Masterpiece Arms semi-automatic Uzi-style pistol, serial number F23482; a Springfield Armory XD9 pistol, serial number AT112939; four oval-shaped pills; 19 round, yellow pills, stamped with C230; 138 rounds of ammunition; and four cellular telephones, from 1201 Oak Drive S.E., Building C2, Apartment A102, Washington, D.C.

7.      On February 12, 2020, the Honorable G. Michael Harvey of the United States District Court for the District of Columbia, granted search warrant 20-SW-43 authorizing the examination of the contents of the four cellular telephones seized from Terrance Phillips' apartment. Your affiant was able to access the contents of the phones on February 13, 2020. One of the phones was identified as belonging to "Taz_Moe" – a known alias of Phillips'.

8.      While examining the contents of Phillips' cellular telephone, I observed numerous iMessage conversations with telephone number (202) 793-9935, to which Phillips had assigned the name "Ali Vegaz" in his "Contacts." On March 2, 2020, I received subscriber subpoena results from T-Mobile, identifying the subscriber of (202) 793-9935 as "Ali Vegaz," with a listed address of 3001 Branch Ave., Temple Hills, MD 20748-1072 and an activation date of May 14, 2019. I then searched open source

databases and determined that Terron BARNES, date of birth March 27, 1982, resided at 3001 Branch Ave., Apartment 241, Temple Hills, MD from December 3, 2018 until August 18, 2019 – which includes the date on which the phone number was activated. Through those same open source databases, I was able to determine that Terron BARNES secured utility services at the address 33 N Street N.E., Apartment 412, Washington, D.C., on July 29, 2019 – and in connection with those utility services, BARNES identified his phone number as (202) 793-9935.[1] Given this information, and based on my training and experience, I believe that "Ali Vegaz" is an alias utilized by Terron BARNES.

9.     A criminal history check of BARNES revealed that BARNES has the following prior convictions punishable by imprisonment for a term exceeding one year: December 12, 2007, Assault with Significant Bodily Injury (18 months' imprisonment, three years' supervised release); March 30, 2009, USCA Distribution of Cocaine (20 months' imprisonment, 5 years' supervised release); October 5, 2011, USCA Possession with Intent to Distribute Marijuana and Methamphetamines (60 days confinement). BARNES was also arrested on March 7, 2020, and charged with Possession with Intent to Distribute Marijuana.[2]

10.     On or about July 31, 2019, Phillips engaged in an iMessage conversation with BARNES. At approximately, 9:49 p.m., BARNES asked, "How much for the go", and Phillips asked, "Huh". BARNES clarified, "Half p" and "Hp". Phillips asked, "Billy" and BARNES confirmed "Yea". Phillips replied, "We ain't asking no half's bro". Based on my training and experience, I understand that BARNES

---

[1] I also searched law enforcement databases and found MPD criminal complaint number (CCN) 20-044681. CCN 20-044681 detailed an incident which occurred on March 13, 2020, where MPD officers were called to 33 N Street N.E. because BARNES was involved in a domestic incident with his girlfriend in the elevator. BARNES provided his address to officers as 33 N Street N.E. Apartment 412, Washington, D.C. 20002.

[2] This case is still pending in D.C. Superior Court under case number 2020-CMD-003101.

was asking for a half pound (Half p) of low-quality marijuana (Billy), and Phillips answered he wasn't taking orders for that much volume.

<u>BARNES' Fraudulent Marijuana Dispensary Business</u>

11.     I understand that the District of Columbia has set forth specific guidelines for opening a legal marijuana dispensary for the sale of medical marijuana within the District of Columbia. Some of those guidelines include that an applicant must first apply for a license and pay an application fee to the D.C. Treasury. The application process takes months, and each application is subjected to a rigorous analysis by a panel. I further understand that all applicants must obtain a Basic Business License from the Department of Consumer and Regulatory Affairs with a General Business license endorsement. D.C. Code § 7–1671.06 serves as the guidelines for all marijuana dispensaries and cultivation centers in the District of Columbia.

12.     A google search revealed a link to the website linkedin.com that lists "Ali Vegaz" as "owner/CEO" of a company called "Pak Religious LLC."[3] Moreover, a public search of Facebook.com reveals an account for "Ali Vegaz" A review of the publicly available photographs on Ali Vegaz's Facebook page are consistent with photographs of BARNES. In the "About Me" section, BARNES a/k/a "Ali Vegaz" lists himself as "Owner at Pak Religious."

a.     BARNES has also posted pictures of himself on his Instagram "Story" which affiliate him with Pak Religious, such as this one he posted on June 25, 2020: BARNES has also posted pictures of himself on his Instagram "Story" which affiliate him with Pak Religious, such as this one he posted on June 25, 2020:

---

[3] Linkedin.com is an online service that can be accessed via websites and mobile apps where individuals and businesses can create an account, which is mainly used for professional networking. The information that is entered into the linkedin account comes from the account holder/user.

9



13.     A review of online public records reveals a District of Columbia Department of Consumer & Regulatory Affairs Corporate Filing for Pak Religious LLC with a business address of 3001 Branch Ave., Apartment 241, Temple Hills, MD 20748-1029. As discussed above in paragraph 21, 3001 Branch Ave. is a former address connected to BARNES. Although there is a business license in the name of Pak Religious, LLC, that business entity does not appear on any list of legally operated dispensaries in the District of Columbia.[4] As mentioned above, a public records search of Pak Religious LLC indicates that the business address is not a public property, but an apartment located at 3001 Branch Ave., Apt. 241, Temple Hills, MD 20748-1029. Upon investigation, it was determined that the address 3001 Branch Ave., Apt. 241, Temple Hills, MD 20748-1029, belongs to Marlborough Apartments, which is a residential property. Your affiant understands that D.C. Code § 7–1671.06 (g) requires that "[A] dispensary,

---

[4] I am aware that the District of Columbia's Department of Health keeps its official list of cultivation centers and dispensaries at
https://dchealth.dc.gov/sites/default/files/dc/sites/doh/publication/attachments/MMP%20memo%20May. pdf (last accessed June 16, 2020).

cultivation center, or testing laboratory shall not locate within any residential district or within 300 feet of a preschool, primary or secondary school, or recreation center."

14.    An Instagram search for Pak Religious LLC revealed an Instagram account with the name of "pakreligiousllc". Pakreligiousllc posted the following publicly available photographs to its account:



These photographs depict "snowcaps" for sale, which based on my training and experience is an edible marijuana treat, as well as four other different types of marijuana, including "Mumbo Sauce." As noted above in paragraph 27, BARNES posted an Instagram picture of himself and another individual with what appears to be a one pound bag of "Mumbo Sauce" marijuana.

15.    The Ali Vegaz Facebook page also posted the following publicly available photographs to its account:



The first photograph states that the "snow caps" are sold out. The second photograph is of a bag of marijuana called "Mumbo Sauce" with a reference to "@pakreligiousllc". "In Pak We Trust" can also be observed written across the top of the Mumbo Sauce bag. Based on the above information, your affiant believes that BARNES is the Owner/CEO of Pak Religious LLC and the user of the pakreligiousllc Instagram account.

17.    On June 25, 2020, @pakreligiousllc advertised the following "special" on its Instagram story.



12

I have observed that @pakreligiousllc posts such "specials" almost every day on its Instagram story. I am also aware that @pakreligiousllc has advertised that it is selling its wares in Miami, Florida, at a time when BARNES also indicated that he was in Miami, Florida.





13

18.    Through the Instagram account pakreligiousllc, BARNES has fraudulently represented himself as a licensed marijuana dispensary. On June 6, 2020, BARNES posted the following photograph to his Instagram account:



a.    In addition, on or about June 10, 2020, the profile of pakreligiousllc listed that it is a "licensed dispensary" as depicted in the below screenshot:[5]



---

5 As of June 15, 2020, a review of pakreligiousllc's Instagram profile reveals that it no longer lists itself as a "licensed dispensary" and instead, describes itself as a "licensed wellness center."

19**.**      D.C. Code § 7–1671.06 (j) provides that "[n]o director, officer, member, incorporator, agent, or employee of a dispensary, cultivation center, or testing laboratory who has access to the medical marijuana at the dispensary, cultivation center, or testing laboratory shall have a felony conviction . . . ." As outlined in paragraph 22 above, BARNES has multiple felony convictions, any one of which would preclude BARNES from receiving a license to legally dispense marijuana in the District of Columbia.

20.      Your affiant further understands that D.C. Code § 7–1671.06(c) requires that "A dispensary may dispense medical marijuana and distribute paraphernalia to a qualifying patient or the qualifying patient's caregiver, and a qualifying patient or the qualifying patient's caregiver may obtain medical marijuana and paraphernalia from a dispensary, only if the qualifying patient is registered to receive medical marijuana from that dispensary." Notwithstanding this provision, as depicted in the below Instagram conversation, BARNES has advised at least one customer of Pak Religious LLC that he does not require that a customer possess a medical marijuana license.



<u>Search of BARNES' Residence</u>

21.     On July 5, 2020, the Honorable Deborah Robinson of the United States District Court for the District of Columbia, granted search warrant 20-SW-163 authorizing the search of BARNES' residence.

22.     The search warrant was executed on July 6, 2020. Present in the apartment at the time of execution was BARNES and a female individual. Special Agents of the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco and Firearms proceeded to search BARNES' residence. Among the items seized from BARNES' residence were: a Spike's Tactical AR-style pistol; a Glock 23 pistol; $18,377 in cash; approximately 11 kilograms of marijuana and THC products (to include their packaging) and three ledger books documenting marijuana sales made by Pak Religious.

23.     On July 6, 2020, the Honorable Deborah Robinson of the United States District Court for the District of Columbia found probable cause to support a criminal complaint charging BARNES with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

24.     On July 8, 2020, after hearing oral argument, the Honorable Deborah A. Robinson ordered that BARNES would be detained pending trial on those charges. On July 14, 2020, a federal grand jury returned an indictment charging BARNES with the same three charges contained in the criminal complaint.

Currency Transaction Report Related to the **TARGET ACCOUNT**

23.    I conducted a search of law enforcement databases for Terron BARNES. The search revealed currency transaction report (CTR) bearing Bank Secrecy Act identification number 31000167282684.

24.    The CTR documented a cash deposit totaling $14,940 was made into the **TARGET ACCOUNT** via Automated Teller Machine ("ATM") on April 22, 2020.

a.    The CTR indicates that the **TARGET ACCOUNT** is held in the name "Terron Demise Barnes," who opened the account using a driver's license in his own name.

b.    The CTR indicates that "Terron Demise Barnes" listed his address for the **TARGET ACCOUNT** as 3001 Branch Avenue Apt. 241, Temple Hills, Maryland 20748. I know through my investigation that BARNES used to live at this address. I also know through my investigation that BARNES listed this address when he incorporated Pak Religious LLC.

c.    The CTR indicates that "Terron Demise Barnes" listed his occupation on the **TARGET ACCOUNT** as "Sales Person / Pak Religious."

25.    As documented above in paragraph 22, three ledger books were seized which documented marijuana sales made by Pak Religious. Below is a picture of one of the ledger book pages documenting pre-order sales made on April 15, 2020.

17



I understand the amounts on the left of the page are pre-order dollar amounts. I further understand following the "dash" on the page, the amount is listed, wherein "Oz" signifies ounce, ½ signifies half of an ounce and "LB" signifies pound. I also understand, based on my training and experience, the names after the amounts signify different types of marijuana, such as "Mumbo", "Gorilla" and "Steak". Finally, I understand the number on the bottom of the page ($11,445) signifies the total dollar amount of pre-order sales for that day.

26. Thus, the evidence minimally establishes that BARNES engages in the illegal distribution of a controlled substance, and that on or about April 15, 2020, he had pre-orders for marijuana of approximately $11,445. One week later, BARNES deposited $14,940 into the TARGET ACCOUNT. Other than the marijuana sales, law enforcement is unaware of any other employment held by BARNES. Moreover, there is no reason to believe that this cash deposit into the TARGET ACCOUNT came from another source of income or asset. Thus, there is probable cause to believe that the $14,940 represents

18

proceeds of narcotics trafficking, and that the TARGET ACCOUNT is being used to hold illegal proceeds of such trafficking.[6]

## CONCLUSION

35. This affidavit establishes probable cause that the funds in the **TARGET ACCOUNT** in the name of "Terron Demise Barnes" are proceeds derived from BARNES' illegal distribution of controlled substances, in violation of Title 21 U.S.C. § 841. Accordingly, there is probable cause to believe that all monies contained in the **TARGET ACCOUNT** at Bank of America, 3821 Minnesota Avenue NE, Washington, DC, constitute proceeds derived from violations of 21 U.S.C. § 881(a)(6).

Wherefore, I request the issuance of seizure warrant pursuant to Title 21, United States Code, Section 881(a)(6).

Respectfully Submitted,

_____
Joshua Rothman
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 17, 2020.

_____
Hon. Deborah A. Robinson
United States Magistrate Judge

---

[6] I am aware that BARNES' attorney represented that BARNES maintained gainful employment in addition to his marijuana sales. I am not aware of any documentation that would verify such employment or provide alternate explanation for the large amounts of cash that BARNES deposited into his bank account and had on hand when the search warrant was executed.